IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM LAU,<br><br>           Plaintiff,<br><br>vs.<br><br>GOOD SAM INSURANCE AGENCY, and NATIONAL GENERAL INSURANCE,<br><br>           Defendants. | Case No. 3:22-cv-00087-JMK<br><br>**ORDER REGARDING PENDING MOTIONS** |

Before the Court are several motions. At Docket 39, Plaintiff William Lau moves for an order requiring Defendants Good Sam Insurance Agency ("Good Sam") and National General Assurance[1] ("National General") (collectively "Defendants") to transport his damaged vehicle to Anchorage. At Docket 46, Defendants move for partial summary judgment on the issue of emergency expense coverage. At Docket 47, Defendants move for partial summary judgment on the issue vacation liability coverage. At Docket 55, Defendants move to compel production of responses to their First Requests for Production, dated, May 30, 2023. At Docket 58, Defendants move for partial summary judgment

---

[1] National General Assurance was improperly named in the caption as National General Insurance.

dismissing Mr. Lau's insurance bad faith claim. And, finally, at Docket 65, Mr. Lau cross-moves for summary on his insurance bad faith claim. All motions are fully briefed.

The Court rules as follows:

## I. BACKGROUND[2] [3]

In 2021, Mr. Lau owned an insurance policy, Policy No. 2003733448, with Good Sam that covered his recreational vehicle, a 2010 Cardinal Fifth Wheel ("Fifth Wheel").[4] National General underwrote Mr. Lau's Policy with Good Sam.[5] On March 18, 2021, Mr. Lau opened a claim with National General, and, on April 22, 2021, called a National General representative, Anyeline Hubble, to follow up on the claim.[6] After Mr. Lau filed his claim, Defendants did not offer to transport the Fifth Wheel to a repair shop.[7] Mr. Lau considered traveling to Alaska to oversee the process of repairing his

---

[2] The Court notes that Defendants' citations to the record are not accurate in multiple instances. For example, Defendants cite Mr. Lau's deposition for the fact that the roof of Birchmere Boat & RV Storage collapsed due to snow load and damaged the Fifth Wheel. However, the lines cited do not directly support these alleged facts. Instead, they reference a colloquy about the date of the collapse without establishing what collapsed and what resulted. Elsewhere, Defendants simply omit citations to the record. For instance, they provide no citation to support the fact that Mr. Lau stored his Fifth Wheel in Birchmere between 2020 and 2021 while he resided in California, that the Good Sam policy was underwritten by National General, or that National General issued a check to Mr. Lau. On summary judgment, it is the movant's burden to show there is no genuine dispute of material fact with citations to the record. Fed. R. Civ. P. 56(c)(1). Even where the basic facts of a case are not the subject of the parties' dispute, the moving party must nonetheless demonstrate that they are supported by the record. It is not the Court's responsibility to comb the record to locate evidentiary support for summary judgment. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c). As explained below, Defendants' failure to cite accurately forces the Court to deny several of its motions.
[3] Additionally, Defendants are instructed to review Local Civil Rule 5.1(f)(1) and adhere to it in future filings.
[4] Docket 46-2.
[5] *Id.*
[6] Docket 46-3 at 1; Docket 45-2 at 4–5.
[7] Docket 45-2 at 6.

*Lau v. Good Sam Ins. Agency, et al.* Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions Page 2
Case 3:22-cv-00087-JMK Document 69 Filed 03/26/24 Page 2 of 15

vehicle, but decided against doing so.[8]  Ultimately, Mr. Lau traveled to Alaska in May or June 2021.[9]  He towed his Fifth Wheel to Homer, Alaska, "utilized" it in the summer of 2021, and then transported it to Nilnilchik, Alaska, in September 2021.[10]  In May 2022, Mr. Lau moved his Fifth Wheel back to Homer and stayed in it throughout the summer.[11]

Ultimately, National General issued a check to Mr. Lau for over $7,000.[12]  Mr. Lau never cashed the check.[13]  He then filed this suit in state court in March 2022.[14]  Defendants removed the case to this Court in April 2022.[15]

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  A material fact is one that "might affect the outcome of the suit under the governing law."[17]  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[19]  To establish that a fact cannot be

---

[8] *Id.* at 12.
[9] *Id.* at 15.
[10] *See id.* at 17, 21, 22.
[11] *Id.* at 23–24.
[12] *Id.* at 25.
[13] *Id.* at 26.
[14] *See* Docket 1-1.
[15] Docket 1.
[16] Fed. R. Civ. P. 56(a).
[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[18] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010).
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[20]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[21] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[22] A party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[23]

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[24] Ultimately, in ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[25]

---

[20] Fed. R. Civ. P. 56(c)(1).
[21] Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).
[22] Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citation omitted); see also Liberty Lobby, 477 U.S. at 252 (specifying that the non-movant "must show more than "[t]he mere existence of a scintilla of evidence"); accord In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010).
[23] Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).
[24] Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102–03 (9th Cir. 2000).
[25] Scott v. Harris, 550 U.S. 372, 378 (2007).

*Lau v. Good Sam Ins. Agency, et al.*     Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions     Page 4
Case 3:22-cv-00087-JMK   Document 69   Filed 03/26/24   Page 4 of 15

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."[26] The court rules on each motion "on an individual and separate basis."[27]

## III. DISCUSSION

The Court addresses each of the pending motions in turn.

### A. Mr. Lau's Motion to Grant Transportation of Fifth Wheel

Mr. Lau moved for a court order compelling Defendants to transport his damaged Fifth Wheel to a repair shop in Anchorage, Alaska.[28] Since filing this motion, on September 15, 2023, Mr. Lau towed the Fifth Wheel to a repair shop in Anchorage, where he had the damage estimated.[29] The Court will **DENY AS MOOT** the motion at Docket 39 because the relief Mr. Lau sought—transportation of his Fifth Wheel—is no longer necessary.

### B. Defendants' Motion for Summary Judgment on Emergency Expense Coverage

Defendants move for summary judgment and argue that Mr. Lau's insurance policy does not require them to arrange for transportation of Lau's 2010 Cardinal B Fifth Wheel ("Fifth Wheel") to a repair shop. They argue that the language of the emergency expense provision in Mr. Lau's policy does not cover transportation of his vehicle in this case because it only applies when "an insured recreational vehicle is rendered

---

[26] *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted).
[27] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FED. PRAC. & PROC. § 2720 (3d ed. 1998)).
[28] Docket 39.
[29] Docket 64 at 2.

*Lau v. Good Sam Ins. Agency, et al.*  Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions  Page 5
Case 3:22-cv-00087-JMK   Document 69   Filed 03/26/24   Page 5 of 15

uninhabitable or inoperable more than 50 miles from the principal garaging or storage location" and Mr. Lau's Fifth Wheel was damaged at its storage location.[30] In the alternative, Defendants argue that Mr. Lau's policy did not apply because the Fifth Wheel was not rendered uninhabitable or inoperable.[31] In response, Mr. Lau asserts in conclusory terms that it is the insurer's responsibility to arrange for transport.[32]

This Court applies Alaska law in interpreting the insurance contract at issue here. In diversity actions, federal courts apply the choice of law rules of the state in which they sit.[33] "Alaska courts 'look to the RESTATEMENT (SECOND) OF CONFLICT OF LAWS for guidance in resolving choice-of-law issues.'"[34] When a contract does not include a choice-of-law provision, the RESTATEMENT instructs that the contract should be construed according to the law of the state with the most significant relationship to the transaction and the parties.[35] "To determine what state has the most significant relationship, the court will consider where the contract was entered, negotiated, and performed; where its subject matter is located; and where the parties are domiciled or incorporated."[36] Additionally, in the context of an insurance contract, the "location of insured risk is a critical factor."[37]

---

[30] Docket 46 at 6.
[31] *Id.* at 6–7.
[32] Docket 51.
[33] *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *accord CNA Ins. Co. v. Lightle*, 364 F. Supp. 2d 1068, 1072 (D. Alaska 2005).
[34] *Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-00183-TMB, 2019 WL 5156273, at *4 (D. Alaska May 1, 2019) (quoting *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001)).
[35] *Lightle*, 364 F. Supp. 2d at 1072 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1)–(2) (1971)).
[36] *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1)–(2) (1971)).
[37] *MAPCO Alaska Petroleum, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 795 F. Supp. 941, 944 (D. Alaska 1991).

Here, because the insured vehicle was located in Alaska, both the subject matter of the contract and the insured risk are located in Alaska. Therefore, Alaska has the most significant relationship to the transaction and parties, and Alaska law governs the contract's interpretation.

In interpreting insurance contracts, Alaska courts look to "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[38] "When reviewing the language of the disputed provisions, courts 'construe [policy language] in accordance with ordinary and customary usage.'"[39]

Part C of Mr. Lau's policy provides coverage for damage to insured recreational vehicles.[40] Part C covers "transportation and emergency travel expenses" and specifically provides that "in the event a **loss** covered under PART C – COVERAGE FOR DAMAGE TO AN INSURED RECREATIONAL VEHICLE causes an **insured recreational vehicle** to be rendered uninhabitable or inoperable more than 50 miles from the principal garaging or storage location, **we** will pay **you** for the expenses **you** incur for lodging, transportation and meals."[41] Elsewhere, the policy defines loss as "sudden, direct, and accidental destruction or damage."[42]

---

[38] *State Farm Fire & Cas. Co. v. Millman*, 413 F. Supp. 3d 940, 952 (D. Alaska 2019) (quoting *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004)).
[39] *Id.* (quoting *State Farm Mut. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).
[40] Docket 45-3 at 25.
[41] *Id.* at 26 (emphasis in original).
[42] *Id.* at 19.

As the Court has noted, Defendants have failed to demonstrate that the record supports basic facts in this case.[43] In particular, Defendants have failed to cite record evidence that Mr. Lau's Fifth Wheel was stored or damaged at Birchmere Boat & RV Storage. Instead, they seem to assume this fact is in evidence and provide details regarding the ensuing events. Accordingly, summary judgment cannot be granted on the basis that Mr. Lau's Fifth Wheel was damaged at its storage location.

Nonetheless, summary judgment that the emergency expense provision of Mr. Lau's policy did not cover transportation of the Fifth Wheel is appropriate. The record demonstrates that Mr. Lau's Fifth Wheel was not rendered uninhabitable or inoperable, construing those terms in accordance with their ordinary usage. In his deposition, Mr. Lau stated that he towed his Fifth Wheel to Homer, Alaska, "utilized" it in the summer of 2021, and then transported it to Nilnilchik, Alaska, in September 2021.[44] Manifestly, Mr. Lau's vehicle was not rendered uninhabitable or inoperable, as he both inhabited it and operated it after the alleged loss. As such, Mr. Lau's policy did not cover transportation of his Fifth Wheel in this instance. Defendants' *Motion for Summary Judgment* at Docket 46 is **GRANTED**.

C.  **Defendants' Motion for Summary Judgment on Vacation Liability Coverage**

At Docket 47, Defendants move for summary judgment on Mr. Lau's claim that they were obliged to extend him vacation liability coverage under his insurance policy. They argue that the policy does not cover damage for which Mr. Lau is not legally

---

[43] See *supra* at n.2.
[44] See Docket 45-2 at 17, 21, 22.

responsible and it is undisputed that Mr. Lau was not legally responsible for the loss that caused damage to the Fifth Wheel.[45] Mr. Lau does not directly respond.[46]

As the Court has discussed, the record before it does not include the basic, but crucial, facts of the incident that led to damage to Mr. Lau's Fifth Wheel.[47] The Court may not assume facts not in the record and must independently evaluate whether the movant has met its burden on summary judgment, even if the motion effectively is unopposed.[48] The Court cannot grant summary judgment here because it lacks the facts to determine whether Mr. Lau was legally responsible for the damage to his Fifth Wheel. Defendants *Motion for Summary Judgment* at Docket 47 is **DENIED**. Defendants may correct the deficiencies the Court has identified and refile their motion.

**D.      Defendants' Motion to Compel**

At Docket 55, Defendants move to compel Mr. Lau to produce responses to their First Requests for Production, dated May 30, 2023. They argue that Mr. Lau has failed to make initial disclosures required under Federal Rule of Civil Procedure 26(a)(1) and has failed to respond to written requests for production, including requests for financial information to substantiate Mr. Lau's claim that he lacked the money to tow his fifth wheel to Anchorage for repair.[49] Mr. Lau responds that apparent typographical errors in

---

[45] Docket 47 at 3–6.
[46] *See* Docket 52.
[47] *See supra* n.2.
[48] *Cristobal v. Siegel*, 26 F.3d 1488, 1496 (9th Cir. 1994).
[49] Docket 56 at 3–5.

*Lau v. Good Sam Ins. Agency, et al.*                                                        Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions                                                                              Page 9
Case 3:22-cv-00087-JMK    Document 69    Filed 03/26/24    Page 9 of 15

communications from defense counsel poisoned the parties' relationship and that the requests for his financial records were irrelevant.[50]

When a discovery dispute arises, "a party may move for an order compelling disclosure or discovery."[51] However, under Federal Rule 37(a)(1), a party seeking judicial intervention in a discovery dispute must "certi[fy] that the movant has in good faith conferred or attempted to confer" before filing its motion. To "confer," "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention."[52] "Again, 'conferring' under Rule 37(a)(2)(B) must be a personal or telephonic consultation during which the parties engage in meaningful negotiations or otherwise provide legal support for their position.[53] Here, while Defendants have not strictly complied with the robust meet-and-confer requirement, the Court concludes that their failure to do so is excusable given Mr. Lau's unambiguous rejection of their attempts to negotiate.[54]

When a party files a civil suit, they are required to make initial disclosures of certain information, including "a computation of each category of damages claimed by the disclosing party . . . ."[55] As part of these disclosures, the party "must also make available for inspection and copying . . . the documents or other evidentiary material, unless

---

[50] Docket 63.
[51] Fed. R. Civ. P. 37(a)(1).
[52] *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996).
[53] *Id.* at 172 (holding a demand letter to opposing counsel did not suffice).
[54] *See* Docket 55-1 at 14–17.
[55] Fed. R. Civ. P. 26(a)(1)(A)(iii).

privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."[56] Moreover, as a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."[57]

In this case, Defendants seek an order compelling Mr. Lau to provide initial disclosures of evidence of his alleged loss of income as a fishing guide, including financial records and schedules from March 2021 to the present. They contend that, "[o]n October 5, 2023, plaintiff again made his finances an issue in the litigation, when plaintiff alleged he lost $2,700 of income by towing his fifth wheel to Anchorage from Soldotna to receive an estimate."[58] Although Mr. Lau's complaint does not specifically seek damages for lost income, it does seek compensatory damages "in an amount not specifically determinable at this time."[59] Insofar as Mr. Lau wishes to seek damages that include his lost income, he must disclose evidence that supports a computation of those damages, including records that show his income as a fishing guide.

Additionally, Defendants seek an order compelling responses to their requests for production, including a request asking for all financial records related to Mr. Lau's claim that he did not have money to tow his fifth wheel to Anchorage from Soldotna for repair. This request is not reasonably calculated to lead to admissible evidence, as the issue of transporting the Fifth Wheel to Anchorage is no longer live.

---

[56] *Id.*
[57] Fed. R. Civ. P. 26(b)(1).
[58] Docket 56 at 3 (citing Docket 55-1 at 14–18); *see also* Docket 55-1 at 2.
[59] Docket 1-1 at 3.

*Lau v. Good Sam Ins. Agency, et al.*     Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions     Page 11
Case 3:22-cv-00087-JMK    Document 69    Filed 03/26/24    Page 11 of 15

Mr. Lau has transported the vehicle and his request that Defendants arrange the transport is moot. Discovery of financial records related to Mr. Lau's claim that he did not have money to tow his Fifth Wheel to Anchorage therefore is not "relevant to any party's claim or defense and proportional to the needs of the case."[60]

Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

### E. Defendants' Motion for Summary Judgment on Bad Faith

At Docket 58, Defendants move for summary judgment on Mr. Lau's claim of insurance bad faith. They argue that they are not liable for bad faith because they twice evaluated Mr. Lau's claim and tendered payment on Mr. Lau's property damage claim, and that they had reasonable bases to deny his claims for emergency expense and vacation liability coverage.[61] Although Mr. Lau did not formally oppose the motion, his cross-motion for summary judgment on his bad faith claims indicates that he believes that Defendants' denial of his requests under the emergency expense and vacation liability provisions of his policy constitute bad faith.[62]

All contracts in Alaska carry an implied duty of good faith and fair dealing.[63] "For insurance contracts, breach of this covenant by the insurer gives the insured a cause of action sounding in tort," which is commonly referred to as the tort of bad faith in an insurance context.[64] Alaska courts have not precisely defined the elements of the tort of

---

[60] Fed. R. Civ. P. 26(b)(1).
[61] Docket 59 at 1–2, 5–9.
[62] *See* Docket 66.
[63] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014).
[64] *Id.*

"bad faith," but "precedent makes clear that the element of breach at least requires the insured to show that the insurer's actions were objectively unreasonable under the circumstances."[65] For example, "[w]hen a bad faith claim is based on a denial of coverage, a plaintiff must show that 'the insurance company's refusal to honor a claim be made without a reasonable basis.'"[66]

Defendants have not demonstrated that they had a reasonable basis to deny coverage under the vacation liability provision of Mr. Lau's policy. As the Court discussed in its analysis of Defendants' motion at Docket 47, the record lacks basic facts concerning the incident that caused damage to Mr. Lau's vehicle. Accordingly, the Court cannot determine whether Defendants had a reasonable basis to deny Mr. Lau's claim under the vacation liability provision of his policy. Defendants' motion is **DENIED**. Defendants may correct the deficiencies the Court has identified and refile their motion.

### F.     Mr. Lau's Cross-Motion for Summary Judgment on Bad Faith

Finally, at Docket 66, Mr. Lau cross-moves for summary judgment on his claim of insurance bad faith. He appears to argue that Defendants are liable for bad faith because they denied coverage under the emergency expense and vacation liability provisions of his policy.[67] Furthermore, Mr. Lau insists that the denial of his claim for coverage under two provisions of his policy amounts to bad faith because Defendants now have tendered payment for the fuel costs he incurred in transporting his Fifth Wheel to

---

[65] *Id.*
[66] *Wroten v. USAA Gen. Indem. Co.*, 535 F. Supp. 3d 880, 883 (D. Alaska 2021) (quoting *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993)).
[67] Docket 66 at 1–3.

Anchorage.[68] In his view, the inconsistency in Defendants' treatment of his claims demonstrates that their denial was without a reasonable basis. Defendants oppose and argue that Mr. Lau has not carried his burden as the movant.[69]

Mr. Lau's argument fails. As discussed, to prevail on a claim of bad faith "[w]hen a bad faith claim is based on a denial of coverage, a plaintiff must show that 'the insurance company's refusal to honor a claim be made without a reasonable basis.'"[70] That Defendants now have reimbursed Mr. Lau's fuel costs does not show that their initial denial of his claim was without a reasonable basis. Furthermore, Mr. Lau's mere assertion that Defendants are liable for bad faith because they denied his claim does not meet the summary judgment standard. To succeed on summary judgment, the moving party bears the burden of establishing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law.[71] To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[72] Mr. Lau has not cited any part of the record or shown that Defendants' denial of his claims was without a reasonable basis. His cross-motion is **DENIED**.

---

[68] *Id.* at 2.
[69] Docket 68.
[70] *Wroten v. USAA Gen. Indem. Co.*, 535 F. Supp. 3d 880, 883 (D. Alaska 2021) (quoting *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993)).
[71] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[72] Fed. R. Civ. P. 56(c)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Mr. Lau's *Motion to Grant Transportation of Fifth Wheel* at Docket 39 is **DENIED AS MOOT**.

2. Defendants' *Motion for Summary Judgment on Emergency Expense Coverage* at Docket 46 is **GRANTED**.

3. Defendants' *Motion for Summary Judgment on Vacation Liability Coverage* at Docket 47 is **DENIED**.

4. Defendants' *Motion to Compel* at Docket 55 is **GRANTED IN PART AND DENIED IN PART**.

5. Defendants' *Motion for Summary Judgment on Insurance Bad Faith* at Docket 58 is **DENIED.**

6. Mr. Lau's *Cross Motion for Summary Judgment on Insurance Bad Faith* at Docket 65 is **DENIED**.

IT IS SO ORDERED this 26th day of March, 2024, at Anchorage, Alaska.

                                                 */s/ Joshua M. Kindred*
                                                      JOSHUA M. KINDRED
                                                      United States District Judge

*Lau v. Good Sam Ins. Agency, et al.*                             Case No. 3:22-cv-00087-JMK
Order Regarding Pending Motions                                                           Page 15
Case 3:22-cv-00087-JMK    Document 69    Filed 03/26/24    Page 15 of 15